### EMERSON SHOE CO. v. ZESMER et al.

(Circuit Court of Appeals, Fifth Circuit. February 2, 1923.)

No. 3938.

1. **Landlord and tenant ☞108(1)—Forfeiture of original lease terminates rights of sublessee.**

Where the lessee of a building had sublet the two upper floors to another, the subsequent annulment of the original lease for failure to pay the rent reserved thereunder terminated the sublessee's right to possession, unless he acquired such right by subsequent agreement with the original lessor.

2. **Landlord and tenant ☞18(3)—Evidence held not to sustain finding of implied agreement by landlord to continue sublease.**

Evidence that, when the bankruptcy of the lessee of a building became imminent, the lessor directed the sublessee to pay the rent direct to the lessor, and thereafter received the rent for several months, without any evidence it was received under an agreement to continue the sublease, *held* insufficient to sustain a verdict finding that the sublessee was entitled to retain possession of the premises.

King, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Texas; William I. Grubb, Judge.

Action at law by the Emerson Shoe Company against I. Zesmer and others, to recover possession of leased premises. Judgment for defendants, and plaintiff brings error. Reversed.

Louis H. Porter, of Dallas, Tex. (Phillips & Townsend and Louis H. Porter, all of Dallas, Tex., on the brief), for plaintiff in error.

Joseph Manson McCormick and Henri Louie Bromberg, both of Dallas, Tex. (Etheridge, McCormick & Bromberg, of Dallas, Tex., on the brief), for defendants in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WALKER, Circuit Judge. On November 1, 1919, G. A. Schaub made a lease to Joseph Collins of a three-story building in Dallas, Tex., for a term of 10 years beginning January 15, 1921, for the sum of $105,000, payable in monthly installments of $875, to be paid in advance on the 15th day of each month during said term. The lease provided:

> "That the lessee may sublet the second and third stories of the building for all or any part of the specified time to any person for any purpose not objectionable to the lessor and if objection is made in writing by the lessor to the persons or to the use made of the sublet premises then the lessee shall immediately eject such tenants from the premises; * * * that in case of default in any of the above covenants the lessor * * * may declare the lease forfeited at his discretion."

By an instrument dated October 20, 1920, Collins leased the second and third floors of the building to I. Zesmer for a term of 10 years from January 15, 1921, for the sum of $36,000, payable $300 per month in advance. Collins did not pay the installment of rent due December 15, 1921, under the lease to him. On December 16, 1921, Schaub gave written notice to Collins of the former's election to declare the lease to the latter forfeited. By a written instrument dated February 7, 1922, Schaub leased the building to the plaintiff in error, Emerson Shoe Company (herein called the plaintiff), the lease contract providing, as stated in the bill of exceptions:

> "That it should begin as soon as the tenant now in possession, who has been adjudged a bankrupt, shall move or be ejected from the first story of the building, and the stock in said first story, being in possession of the trustee of Joseph Collins, bankrupt, it expressly stating that it was understood between the parties that the said stock would be sold under an order of the referee in bankruptcy, and possession of the property surrendered to lessor, who should thereupon deliver possession thereof, with the tenants occupying the second and third floors in possession to the lessee, at which time the tenancy thereby granted should begin and continue thereafter for a period of ten years."

Thereafter the plaintiff brought suit against the defendants in error (herein called the defendants), to recover possession of the building. The defendants entered a disclaimer as to the ground floor of the building except a right of way and easement of passage over the stairway leading up to the second and third floors of the building. With the exception indicated they denied the right asserted by the suit. Schaub accepted from Zesmer rent for the second and third floors for the months beginning December 15, 1921, January 15, 1922, and February 15, 1922; the payments being made by checks for $300 each, the first of which was dated December 15, 1921. A check for the same sum, dated March 15, 1922, and payable to Emerson Shoe Company, was returned by that company. Schaub did not acquire possession from the trustee in bankruptcy of Collins until March 14, 1922. The court's refusal to give a requested charge to the jury to return a verdict for the plaintiff was excepted to.

[1] There was conflicting evidence as to the circumstances under which Zesmer was permitted to retain possession of the second and third floors of the building after the lease to Collins was declared forfeited. A result of the annulment of the lease to Collins was that Zesmer, the subtenant of Collins, thereafter had no right of possession ex-

cept such as he acquired by a contract or agreement binding on Schaub, the original lessor. Doyle v. Scott (Tex. Civ. App.) 134 S. W. 828; Brock v. Desmond, 154 Ala. 634, 45 South. 665, 129 Am. St. Rep. 71. In behalf of the defendants it was contended that Schaub assented to the sublease of Collins to Zesmer remaining in effect after the annulment of the original lease to Collins, the stipulated rent to be paid to Schaub. The phase of the evidence relied on to support this contention was to the following effect: On the 14th or 15th of December, 1921, Schaub notified Zesmer that Collins was about to go into bankruptcy, and directed Zesmer to see Schaub's attorney, Judge Short, about his (Zesmer's) rent. Thereupon Zesmer saw Judge Short on December 15th and informed him that he (Zesmer) was the tenant of the second and third floors of the building. Judge Short asked Zesmer when his rent was due, and Zesmer stated that it was due that day, and gave Judge Short a $300 check therefor, which check, dated December 15, 1921, was delivered to and cashed by Schaub. When that check was given the bankruptcy of Collins had not occurred. Zesmer gave Judge Short another $300 check on January 15, 1922, and a third check for the same amount on February 15, 1922. Zesmer stated to Judge Short that he had spent plenty of money in fixing the place up and that he was willing to carry out the lease to Collins at the rent Collins had paid. Zesmer never offered to any one the monthly rental called for by the lease to Collins. Zesmer spoke to Judge Short several times about taking over the Collins lease. So far as appears, the sublease of Collins to Zesmer was never mentioned, and Schaub and his lawyer did not know of its terms or the period it was to cover.

[2] We are of opinion that there was an absence of evidence to support a finding that Schaub or his lawyer expressly or impliedly agreed to the sublease of Collins to Zesmer remaining in effect. Under the circumstances of the giving of the notice by Schaub to Zesmer, it meant merely a warning that, because of the impending bankruptcy of Collins, a payment to him of rent for the second and third floors would confer no right to continued possession by the occupant thereof, and that the latter could acquire such right only by dealing with the owner of the property. There was no evidence tending to prove that Schaub consented that a cancellation of his lease to Collins because of a contemplated default in the payment of the stipulated rent should be ineffective as to the second and third floors of the rented building, or that the sublease to Zesmer should remain in force; the rent it called for to be paid to Schaub. When Schaub gave notice of the cancellation of the original lease, that had happened which entitled him to cancel, namely, a failure to pay rent for the whole building when it was due. There was no evidence that Schaub consented to forego or abridge that right upon rent being paid for only the second and third floors. In the absence of any evidence tending to prove that it was even suggested that the sublease to Zesmer be kept in force, the fact that for three successive months, while the trustee in bankruptcy of Collins retained possession of the ground floor, Schaub accepted from Zesmer, as rent for the second and third floors, the amount of monthly rental called for by the sublease, is not enough to support an inference that Schaub consented to be bound by that instrument. We do not think

that any evidence adduced tended to prove that the minds of Schaub or his lawyer and Zesmer met in an agreement to adopt, as a contract between Schaub and Zesmer, the sublease made by Collins. There was no evidence to support a finding that the defendants acquired a right of possession of any part of the premises sued for beyond the period for which Schaub accepted rent.

We are of opinion that under the evidence adduced the plaintiff was entitled to recover possession of the property sued for, and that the court erred in the above-mentioned ruling. Because of that error, the judgment is reversed.

KING, Circuit Judge (dissenting). On November 1, 1919, G. A. Schaub made a lease to Joseph Collins of a three-story building in Dallas, Tex. The term of the lease was 10 years from January 15, 1921. The lease provided:

"That the lessee shall pay the rent monthly in advance as aforesaid as the same shall fall due; that the lessee may sublet the second and third floors of the building for all or any part of the specified time to any person for any purpose not objectionable to the lessor and if objection is made in writing by the lessor to the persons or to the use made of the sublet premises then the lessee shall immediately eject such tenants from the premises."

Under the above permission of said lease, Collins sublet the second and third floors of said building to I. Zesmer for said term of 10 years. Zesmer took possession under his sublease and was in possession at all times during the occurrences here in question.

On December 14, 1921, Schaub, learning that Collins was about to become bankrupt, notified Zesmer through his clerk that he would have to see him (Schaub) about the place and rent. Zesmer called up Schaub on the telephone and was referred by him to his attorney, Judge Short, who had an interview with, and collected from, Zesmer his rent due that day for the ensuing month. Short turned over the check for it to the owner, Schaub. The rents due in January and February were collected by Schaub from Zesmer covering the time until March 15, 1922.

On February 7, 1922, Schaub made a lease of the entire building to Emerson Shoe Company for 10 years to begin as soon as "the tenant now in possession (Collins)," who had been adjudged a bankrupt, should remove or be ejected from the first floor and that should be surrendered to Schaub, "who should thereupon deliver the possession thereof, with the tenants occupying the second and third floors in possession to the lessee," etc.

On March 15, 1922, Zesmer tendered a check for the March rent to Schaub, who declined it and then referred him to the Emerson Shoe Company. Zesmer then tendered said rent to the Emerson Shoe Company, who declined it, and on March 31, 1922, returned said check to Zesmer. On March 16, 1922, Emerson Shoe Company had demanded possession from Zesmer. Zesmer refused to surrender possession.

Emerson Shoe Company brought suit against Zesmer and others, alleging that it owned an estate for years in said three-story building, and that the defendants on March 15, 1922, unlawfully entered and ejected it therefrom and prayed judgment for possession and damages.

Defendants disclaimed any possession of or claim to the first story of said building, except an easement of passage over a stairway leading to said second and third floors, but denied the trespass and injury complained of.

The court refused to instruct a verdict for the plaintiff, but submitted to the jury the question whether the defendants were or not guilty of trespass as alleged.

The jury found for the defendants.

The only error assigned is the refusal of the court to instruct a verdict for the plaintiff.

Unless there is an entire want of evidence upon which the jury might properly have based their verdict, the judgment should be affirmed.

It is conceded that on a failure of Collins to pay his rent on becoming bankrupt, Schaub could have forfeited the lease and re-entered, and that the subtenant would have lost whatever rights were conferred by the sublease. The question, however, in this case is: If the conduct of Schaub in regard to Zesmer as a subtenant when notified of Collins' impending bankruptcy, and thereafter, afforded no such evidence of a subsequent implied recognition of Zesmer as a tenant lawfully in possession under said sublease as would warrant the jury in finding that Zesmer had been recognized by Schaub as his tenant.

Zesmer was in possession on December 14th when Schaub told him not to pay further rent to Collins, and on the 15th when he received rent for the coming month from Zesmer. Schaub knew he was in possession as a subtenant by permission of his lease to Collins.

The possession of Zesmer was notice to Schaub, and indeed to the world, of the right under which he held and the term of his estate. 20 R. C. L. p. 352.

Schaub does not deny that he knew the terms of his lease.

Short's testimony of the interview between himself and Zesmer in December, 1921, before receiving Zesmer's check for rent, shows that Zesmer told him of his lease and that he had spent a large sum on the property to improve it.

The jury were warranted by the evidence in finding that Schaub and Short had notice of Zesmer's lease and its duration.

It is not contended that the bankrupt's trustee had possession of anything more than the first floor. Schaub could have dispossessed Zesmer at any time after December 15, 1921, had he wished to disavow the sublease. On the contrary, he left Zesmer in possession of the second and third floors with no intimation that it was under any other arrangement than a substitution of Schaub for Collins as the landlord entitled to collect the rent under Zesmer's existing lease.

The rent collected by Schaub from Zesmer for the period from December 15, 1921, to March 15, 1922, was the contractual rate due by the terms of the sublease. There is no suggestion that this amount was paid otherwise than as and for the rent thus reserved.

This is prima facie a recognition by the landlord of this sublease and would be some evidence of an acceptance of Zesmer as a tenant under its terms with Schaub as the landlord.

To hold otherwise is to hold that the acceptance of the rent was under a new contract from month to month, when there is no evidence of any such agreement, and the whole matter would rest on a presumption arising solely from the demand for, and payment of, the rent reserved by Zesmer's original lease.

Again, there was this circumstance from which it might be inferred that either Schaub did not regard that the termination of the Collins lease worked a termination of the rights of Zesmer, or that Schaub thought he had recognized the tenancy of Zesmer: His agreement with the Emerson Shoe Company in its lease was that he would turn over to it the possession of the first floor as soon as he could retake it and would turn over the tenants on the second and third floors to the Emerson Shoe Company.

It may be true that Zesmer negotiated with a view of taking the lease on the entire building; but under Zesmer's version of the facts this was not in order to retain possession of the second and third floors, and no discussion was had in regard to his having no rights in them if he did not take such entire lease.

There were a number of conflicts between the evidence of Schaub and Short, and that of Zesmer and his witnesses; but the jury had the right to accept Zesmer's contention in all such instances.

There is no complaint that the court did not properly charge the jury on every contention in the case, but the sole question is plaintiffs' insistence that under no proper view of the evidence could there be a verdict other than for the plaintiff.

That a verdict for the plaintiff would have been justified by the evidence, or even by the weight of the evidence, does not warrant a reversal of the judgment of the lower court. Humes v. United States, 170 U. S. 210, 212, 18 Sup. Ct. 602, 42 L. Ed. 1011.

It is only an entire want of evidence to sustain it that would make the refusal of the court to direct such verdict error.

The learned trial judge who heard the witnesses testify refused to direct a verdict for the plaintiff, but submitted the case to the jury. I cannot say that there was no evidence to warrant him in so doing, and so dissent from the judgment of reversal.